NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| WILLIAM ACKERMAN, | |
| Plaintiff, | Hon. Garrett E. Brown, Jr. |
| v. | Civil Action No. 09-1097 (GEB) |
| BETH ISRAEL CEMETERY ASSOCIATION OF WOODBRIDGE, NEW JERSEY, | **MEMORANDUM OPINION** |
| Defendant. | |

**BROWN**, **Chief Judge:**

This matter comes before the Court upon the motion to dismiss (Doc. No. 40) filed by Defendant Beth Israel Cemetery Association. For the following reasons, the Court will grant Defendant's motion.

**I. BACKGROUND**

In March 2006, this matter was commenced in the United States District Court for the Eastern District of New York. Plaintiff William Ackerman brought this action against Defendant, alleging that he was discriminated against because of his disability in violation of Title II of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12131-12165, and the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601-2654 (Am. Compl. ¶ 1.) Plaintiff was employed by Defendant from September 2000 to October 2005 as a groundskeeper at Defendant's Woodbridge, New Jersey location. (*Id.* ¶¶ 8, 9.) On June 16, 2005, Plaintiff informed Defendant that he needed to undergo a heart procedure. (*Id.* ¶ 9.) With

1

Defendant's consent, Plaintiff went on leave pursuant to the FMLA (*Id.* ¶ 12), which "entitle[s] employees to take reasonable leave for medical reasons." 29 U.S.C. § 2601(b)(2). Defendant supplied Plaintiff with FMLA forms that specified that Plaintiff was to return to work on September 8, 2005. (Am. Compl. ¶ 13.) Plaintiff claims that he later contacted his supervisor and obtained consent to remain on leave past the specified return date. (*Id.* ¶¶ 14, 15.) After undergoing the procedure, Plaintiff alleges he obtained a note from his physician indicating when and under what conditions he could return to work and delivered the note to Defendant. (*Id.* ¶¶ 17, 18.) On October 14, 2005, Defendant's head supervisor sent Plaintiff a letter advising him that his position with Defendant had been filled and that he would be permitted to apply for another position with a doctor's note. (*Id.* ¶ 19.) Plaintiff alleges that the head supervisor informed him that Defendant did not have any positions available "for an employee on modified duty or who needed a pacemaker." (*Id.* ¶ 22.) As a result of these events, Plaintiff alleges that Defendant filled his position in violation of the FMLA and that Defendant discriminated against him in violation of Title II of the ADA "by failing to allow Plaintiff to return to work, effectively terminating him." (*Id.* ¶ 30.)

On September 6, 2006, Plaintiff moved for entry of default against Defendant because Defendant had not answered the Complaint. The Clerk of Court of the United States District Court of the Eastern District of New York informed Plaintiff's counsel that entry of default was precluded because Plaintiff had not filed an affidavit of service. Plaintiff filed an affidavit of service that same day, which indicated that the process server left a copy of the Summons and Complaint on the front desk at Defendant's Woodbridge, New Jersey location and mailed copies to Defendant thereafter.

On August 8, 2007, the Honorable Steven M. Gold, United States Magistrate Judge, filed a Report and Recommendation concluding that Plaintiff's method of service was ineffective because Plaintiff had not complied with either Federal Rule of Civil Procedure 4 or the New York Civil Practice Law and Rules in serving process upon Defendant. (Doc. No. 6.) Rule 4(h) provides that service may be made upon an association "in the manner prescribed by Rule 4(e)(1) for serving an individual," which allows a plaintiff to follow state law for serving a summons, or "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or law to receive service of process and -- if the agent was one authorized by statute and the statute so requires -- by also mailing a copy of each to the defendant." Fed. R. Civ. P. 4(h). New York Civil Practice Law and Rules 311 provides that personal service upon a corporation may only be made by delivery to "an officer, director, managing or general agent, or cashier or assistant cashier or to any other agent authorized by appointment or by law to receive service." N.Y. C.P.L.R. 311. Magistrate Judge Gold recommended that the action be dismissed unless Plaintiff submitted a memorandum of law explaining the basis on which he contended that Defendant had been properly served. (Doc. No. 6.) Plaintiff filed an Affidavit in response to the Report and Recommendation in which Glenn Burroughs, a licensed process server, indicated that he had left a copy of the Summons and Complaint on the front desk in Defendant's offices and mailed copies to Defendant's address. (Doc. No. 11.)

On March 10, 2008, Magistrate Judge Gold filed a second Report and Recommendation reaffirming his prior recommendation of dismissal. (Doc. No. 12.) Magistrate Judge Gold determined that leaving a copy of the Summons and Complaint on Defendant's desk and mailing

3

a copy to Defendant's address was not proper service. (*Id.*) On March 12, 2008, Plaintiff filed an objection to the Report and Recommendation, arguing that the court should permit him to re-serve the Complaint because he diligently pursued service, and if the action were dismissed, a re-filed claim may have been barred by the applicable statute of limitations. (Doc. No. 13.) On March 20, 2008, the Honorable Eric N. Vitaliano, United States District Judge for the Eastern District of New York, granted Plaintiff's request for an extension of time to serve Defendant and directed Plaintiff to effect service on or before April 19, 2008. (Doc. No. 14.)

On April 17, 2008, Plaintiff's process server left a copy of the Original Complaint and Summons with a receptionist at Defendant's Woodbridge, New Jersey offices. On April 18, 2008, Plaintiff also served Defendant's agent, Corporation Service Company, with an Amended Complaint, which was filed with the Clerk of Court the same day. (Doc. No. 15.) Defendant points out that the Amended Complaint filed with the Court and the Amended Complaint served on Defendant's authorized agent are not identical. Specifically, the copy of the Amended Complaint served on Defendant's authorized agent refers in Paragraph 8 to "Defendant," whereas the Amended Complaint filed with the Clerk of Court refers in Paragraph 8 to "Respondent." (*Compare* Meyer Decl., Ex. B ¶ 8, *with* Am. Compl. ¶ 8.) Additionally, in the Amended Complaint served on Defendant's authorized agent, Paragraph A of the Prayer for Relief lacks the word "the" present in the Amended Complaint filed with the Clerk of Court. (*Compare* Meyer Decl., Ex. B ¶ 9, *with* Am. Compl. ¶ 7.) The formatting of the Amended Complaint filed with the Clerk is also different than the Amended Complaint served on Defendant's authorized agent.

On May 6, 2008, Defendant filed a motion for leave to file a motion to dismiss,

contending that service was still improper, the Eastern District of New York did not have personal jurisdiction over Defendant, and venue was improper. (Doc. No. 16.) Defendant's motion was later terminated, and on March 10, 2009, Plaintiff submitted a stipulation and consent agreeing to transfer the action to the United States District Court of New Jersey. (Doc. No. 23, 24.) On March 11, 2009, Judge Vitaliano transferred the action to this District. (Doc. No. 25.) On January 25, 2010, Defendant moved to dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(4), (5), and (6) for insufficient process, insufficient service of process, and failure to state a claim upon which relief can be granted.[1]

**II. DISCUSSION**

    **A. Service of Process**

Defendant first asserts that the Complaint should be dismissed because the Summons accompanying both the Original Complaint and the Amended Complaint was not signed by the Clerk of Court and did not bear the court's seal, as required by Rule 4 of the Federal Rules of Civil Procedure. Plaintiff provides no response to Defendant's argument that the Complaint should be dismissed because the Summons was not signed or sealed, other than reciting the means by which service of process was effected and stating that it was proper. (Pl.'s Br. at ¶¶ 4-5.)

Federal Rule of Civil Procedure 4 prescribes "the procedure by which a court obtains personal jurisdiction over a defendant." *Ayres v. Jacobs & Crumplar, P.A.*, 99 F.3d 565, 569 (3d Cir. 1996). Rule 4(a) requires that: "A summons must: . . . (F) be signed by the clerk; and (G)

---

[1] By order of March 15, 2010, the instant matter was reassigned to the undersigned.

bear the court's seal." Fed. R. Civ. P. 4(a)(1).  The Third Circuit has held that "[a] summons which is not signed and sealed by the Clerk of the Court does not confer personal jurisdiction over the defendant," even if service was properly made, because "requiring the Clerk to sign and issue the summons assures the defendant that the process is valid." *Ayres*, 99 F.3d at 569-70 (citations omitted).  Because the parties cannot waive a void summons, "the failure of a plaintiff to obtain valid process from the court to provide it with personal jurisdiction over the defendant in a civil case is fatal to the plaintiff's case." *Id.* at 569.  "Upon proper motion, or if the defendant raises the matter in the responsive pleading, such suit should be dismissed under Fed. R. Civ. P. 12(b)(2)." *Id.*

Courts in New York, where this action was originally commenced, have also held that an unsigned and unsealed summons violates the requirements of Rule 4.  *See Macaluso v. N.Y. Dep't of Envtl. Conservation*, 115 F.R.D. 16, 17 (E.D.N.Y. 1986) (holding that service of process was insufficient because the summons did not bear either the clerk's signature or the court's seal); *Gianna Enters. v. Miss World (Jersey) Ltd.*, 551 F. Supp. 1348, 1358 (S.D.N.Y. 1982) (finding that service of an unsigned and unsealed summons demonstrated a "flagrant disregard for the rules and fail[ed] to assure the person served that the summons was in fact issued by the clerk of a court and not by the plaintiff or his attorney").

An action is properly dismissed under Rules 12(b)(2), (4) and (5) for a defect in process or service of process. *Ayres*, 99 F.3d at 569; *see* Fed. R. Civ. P. 12(b)(2), (4), (5).  In this case, neither Summons Plaintiff served upon Defendant was signed by the Clerk of Court or sealed, and thus neither Summons established this Court's personal jurisdiction over Defendant.  Thus, this action would be properly dismissed under Rule 12(b)(2) for lack of personal jurisdiction.

*Ayres*, 99 F.3d at 569.  Those rules, however, "do not mandate dismissal."  *Can. Life Assur. Co. v. Converium Ruckversicherung (Deutschland) AG*, No. 06-3800, 2007 U.S. Dist. LEXIS 42890, at *14 (D.N.J. June 12, 2007).  "Rather, [Federal Rule of Civil Procedure] 4(m) provides that upon finding that either the process or the service of process was insufficient, a court has the discretion to either dismiss the action without prejudice or to quash service and order the plaintiff to effect service within a specified time."  *Id.*  The Third Circuit has held that a district court determining whether to grant an extension of time to serve process must engage in a two-part inquiry.  *Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1305 (3d Cir. 1995).  "First, the district court should determine whether good cause exists for an extension of time.  If good cause is present, the district court must extend time for service . . . ."  *Id.*  If good cause does not exist, "the court may in its discretion decide whether to dismiss the case without prejudice or extend time for service."  *Id.*

### 1.  Mandatory Extension for Good Cause

A showing of good cause "requires 'a demonstration of good faith on the part of the party seeking an enlargement and some reasonable basis for noncompliance within the time specified in the rules.'"  *MCI Telecomms. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1097 (3d Cir. 1995) (quoting *Petrucelli*, 46 F.3d 1298 at 1312 (Becker, J., concurring in part and dissenting in part)).  The "primary focus" of the good cause inquiry "is on the plaintiff's reasons for not complying with the time limit in the first place."  *MCI*, 71 F.3d at 1097.  "The plaintiff must show that he exercised diligence in trying to effect service."  *Jumpp v. Jerkins*, No. 08-6268, 2010 U.S. Dist. LEXIS 17765, at *20 (D.N.J. Mar. 1, 2010) (citations omitted).  "Courts have considered three factors in determining the existence of good cause:  (1)

7

reasonableness of plaintiff's efforts to serve[;] (2) prejudice to the defendant by lack of timely service[;] and (3) whether plaintiff moved for an enlargement of time to serve." *MCI*, 71 F.3d at 1097. "Inadvertence of counsel," "half-hearted efforts at service which fail to meet the standard," and reliance upon a third party or a process server do not amount to good cause. *Braxton v. United States*, 817 F.2d 238, 241 (3d Cir. 1987) (citations omitted). "Disregard for . . . the 'technical niceties' of service of process" also does not constitute good cause. *Ayres*, 99 F.3d at 568.

First, in this case, Plaintiff has provided no reason for his failure to properly serve Defendant with process. Plaintiff's latest effort to serve Defendant was not reasonable as he failed to comply with the requirements of Rule 4 even after Judge Vitaliano granted him an extension to correct the original defects in process. Plaintiff failed to have the Clerk of the Court sign and seal the Summons he served on Defendant with the Original Complaint and the Amended Complaint. *See* Meyer Decl., Ex. A at 1, Ex. B at 4. Furthermore, Plaintiff provides no excuse for this oversight, but rather merely refers to a copy of the affidavits of service and asserts that "[the] affidavits satisfied Rule 4 . . . as well as the directives of Judge Vitaliano." (Pl.'s Br. at ¶¶4-5.) Thus, Plaintiff has not shown reasonable efforts to properly serve Defendant. With regard to the second factor, although Defendant does not contend that it has been prejudiced by Plaintiff's lack of timely service or insufficient process, this Court recognizes that "absence of prejudice alone can never constitute good cause to excuse late service." *MCI*, 71 F.3d at 1097. Finally, although Plaintiff moved for an enlargement of time to serve before Judge Vitaliano, Plaintiff failed to effect proper service in the time period granted. Weighing those three factors, this Court concludes that Plaintiff has not demonstrated good cause for failing to

properly serve Defendant.

### 2. Discretionary Extension of Time

In the absence of good cause, "the court may in its discretion decide whether to dismiss the case without prejudice or extend time for service." *Petrucelli*, 46 F.3d at 1306. The Third Circuit has held that the discretionary inquiry is separate from the good cause inquiry; in fact, "a court abuses its discretion by using its good cause analysis to find an exercise of discretion is unwarranted per se." *Jumpp*, 2010 U.S. Dist. LEXIS 17765, at *21 (citing *Boley v. Kaymark*, 123 F.3d 756, 758-60 (3d Cir. 1997)). In determining whether to grant a discretionary extension, the court may consider several factors, including: "1) actual notice of the action, 2) prejudice to the defendant, 3) statute of limitations, 4) conduct of the defendant, 5) whether the plaintiff is represented by counsel, and 6) any other relevant factor." *Id.* at *20.

In considering those factors, the Court notes that Defendant had actual notice of this action, as evidenced by its participation in settlement negotiations and filing of a motion to dismiss, and Defendant has not argued that it has been prejudiced by Plaintiff's untimely service. With regard to the statute of limitations, the Court recognizes that Plaintiff's claims would be subsequently barred if the Court grants the motion to dismiss.[2] The Third Circuit has emphasized, however, that "the running of the statute of limitations does not require the district court to extend time for service of process." *Petrucelli*, 46 F.3d at 1306. In considering other relevant factors, the Court notes that Plaintiff has been represented by counsel and has twice

---

[2] The statute of limitations applicable to Plaintiff's ADA claim "is the statute of limitations for personal injury actions in the state in which the trial court sits," which is two years in New Jersey. *Disabled in Action v. SEPTA*, 539 F.3d 199, 208 (3d Cir. 2008); *see* N.J. Stat. Ann. § 2A:14-2. The statute of limitations applicable to the FMLA is also two years. 29 U.S.C. § 2617(c)(1).

failed to serve Defendant properly. Moreover, in his March 20, 2008 Order, Judge Vitaliano stated that "failure to effect service in accordance with this Order will result in dismissal of the complaint without formal, but perhaps with practical, prejudice." *Ackerman v. Beth Israel Cemetery Ass'n.*, No. 06-CV-1125, slip op. at 6 (E.D.N.Y. Mar. 19, 2008).

Plaintiff's failure to properly serve Defendant even after having been granted an extension weighs against granting him another extension. Plaintiff has had ample time to properly serve Defendant, but has repeatedly failed to do so, despite being given every opportunity. Moreover, Plaintiff has provided no excuse for those failures or explanation for why the Court should grant another extension for Plaintiff to serve. The Court therefore finds that a discretionary extension of time is not warranted. The Court will grant Defendant's motion to dismiss, without prejudice.

### B. Failure to State a Claim Under the ADA and the FMLA

Even if this Court were to conclude that Plaintiff properly served Defendant, this Court, pursuant to Federal Rule of Civil Procedure 12(b)(6), would still dismiss the Complaint for failure to state a claim. A motion to dismiss under Rule 12(b)(6) may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that plaintiff has failed to set forth fair notice of what the claim is and the grounds upon which it rests. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint will survive a motion to dismiss if it contains sufficient factual matter to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly,* 550 U.S. at 570). The plausibility standard requires that "the plaintiff plead[] factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged" and demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). Although a court must accept as true all factual allegations in a complaint, that tenet is "inapplicable to legal conclusions," and "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555); *see also Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).

### 1. ADA Claim

Defendant argues that Plaintiff's ADA claim should be dismissed for failure to state a claim upon which relief can be granted. Defendant argues that it is not covered by Title II of the ADA, as it is not a "public entity," and that even if the Court were to overlook the fact that Plaintiff specifically seeks to recover under Title II and not Title I (*see* Am. Compl. ¶¶ 1, 28-30), a Title I claim would also be subject to dismissal because Plaintiff failed to exhaust his administrative remedies with the Equal Employment Opportunity Commission ("EEOC"). (*Id.*)

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of [said] disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The term "public entity" is defined as: "(A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and (C) the National Railroad Passenger Corporation, and any commuter authority." 42 U.S.C. § 12131. In this case, Plaintiff appears to contend that because Defendant is "an agency duly organized and existing by virtue of the laws of the State of

New York and New Jersey" (Am. Compl. ¶ 6), it constitutes an "agency" of state or local government within the meaning of Title II. Plaintiff does not specifically plead that Defendant is such an entity and thus provides no basis for this contention. Courts have held that private corporations and other associations do not constitute "public entities" as contemplated by the ADA. *See Anderson v. DSM N.V.*, 589 F. Supp. 2d 528, 535 (D.N.J. 2008) (defendants were private corporations and thus did not come within Title II's "concerns [about] the activities of *public entities*") (emphasis in original)); *Phillips v. Perkiomen Crossing Homeowners Ass'n*, No. 95-CV-1535, 1995 U.S. Dist. LEXIS 14375, at *2-3 (E.D. Pa. Sept. 29, 1995) (home owners' association not a public entity as defined by the ADA because there was "no evidence that [it was] affiliated with state or local government in such a way as to fall under Section 12131"). Because it appears that Defendant is a private organization and is not an agency of state or local government, and Plaintiff has not articulated the basis on which it contends the contrary, this Court finds that Defendant is not a public entity as defined by the ADA and thus not covered by Title II of the ADA.

Plaintiff argues in response to Defendant's contention that it is not covered by Title II that "[t]he ADA covers private employers with 15 or more employees." (Pl.'s Br. at ¶ 9.) However, it is "Title I of the ADA [that] covers all public and private employers, employment agencies and labor unions, excepting small businesses and the federal government." *Lavia v. Pennsylvania*, 224 F.3d 190, 198 (3d Cir. 2000) (citing 42 U.S.C. §§ 12111(2), (5), (7)). Even if the court were to overlook that Plaintiff seeks recovery specifically under Title II and analyze Plaintiff's claim under Title I, Defendant argues that any Title I claim would also be subject to dismissal for failure to exhaust administrative remedies. Defendant contends that the Amended Complaint

12

does not plead that Plaintiff has filed a charge with the EEOC, "a prerequisite to any private action under Title I of the ADA." (Def.'s Br. at 6.)  Plaintiff responds to this argument by attaching a copy of Title I of the ADA and contending that the section "does not state that administrative exhaustion is a prerequisite under Title I." (Pl.'s Br. at ¶ 12.)

"[A] party who brings an employment discrimination claim under Title I of the ADA must follow the administrative procedures set forth in Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5." *Churchill v. Star Enters.*, 183 F.3d 184, 190 (3d Cir. 1999) (citing *Bishop v. Okidata, Inc.*, 864 F. Supp. 416, 424 (D.N.J. 1994)).  The "prerequisites to a suit under Title VII are the filing of charges with the EEOC and the receipt of the Commission's statutory notice of the right to sue." *Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398 (3d Cir. 1976) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).  "[A] party must wait 180 days after filing a charge with the EEOC for ADA violations before being able to forego the administrative process and file suit in court." *Churchill*, 183 F.3d at 190; *see* 42 U.S.C. § 2000e-5(e)(1).  After those 180 days, "'if a complainant is dissatisfied with the progress the EEOC is making on his or her charge of employment discrimination, he or she may elect to circumvent the EEOC procedures and seek relief through a private enforcement action in a district court.'" *Churchill*, 183 F.3d at 190 (quoting *Occidental Life Ins. Co. of California v. EEOC*, 432 U.S. 355, 361 (1977)).

In this case, Plaintiff does not claim that he filed a complaint with the EEOC or that he received a notice of the right to sue from that agency.  Thus, because Plaintiff has failed to exhaust his administrative remedies with the EEOC, any Title I claim would be barred.

### 2. FMLA Claim

As to Plaintiff's FMLA claim, Defendant argues that this claim should be dismissed for failure to state a claim upon which relief can be granted because Defendant's replacement of Plaintiff while he was on FMLA leave does not amount to a violation of the statute. Defendant contends that the FMLA only protected Plaintiff's right to reinstatement for the twelve-week period of leave the statute provides for and that Plaintiff exceeded this period. Plaintiff acknowledges that the FMLA affords a limited leave period, stating that "[u]nder the FMLA a covered employer . . . must afford eligible employees up to 12 work weeks of leave." (Pl.'s Br. at ¶ 8.) Defendant also argues that Plaintiff's right to reinstatement was only protected under the FMLA during the twelve-week period that expired on September 8, 2005, and that because Plaintiff was not notified by his physician that he could return to work until after that date, he lost the FMLA's protections.

"Under the FMLA, employees are entitled to a maximum of twelve weeks of unpaid leave per year to address 'a serious health condition that makes the employee unable to perform the functions of the position of such employee.'" *Anderson,* 589 F. Supp. 2d at 536 (quoting 29 U.S.C. § 2612(a)(1)(D)). The Third Circuit has held that until the end of this period "an employee is entitled to reinstatement to his former position or an equivalent one with 'equivalent employment benefits, pay and other terms and conditions of employment.'" *Sommer v. Vanguard Group*, 461 F.3d 397, 399 (3d Cir. 2006) (quoting 29 U.S.C. § 2614(a)(1)). Under the FMLA, "[o]nce an employee has been provided with 12 workweeks of leave, the employer's obligations under the FMLA expire." *Devine v. Prudential Ins. Co. of Am.*, No. 03-3971, 2007 U.S. Dist. LEXIS 46856, at *80, 88 (D.N.J. June 27, 2007). The Third Circuit has supported this

proposition, holding that an employee who exceeded his FMLA leave "was subject to immediate discharge on the very first workday that he was both absent from work and no longer protected by the FMLA." *Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135, 148 (3d Cir. 2004). Employees who exceed the twelve weeks of leave the FMLA provides for "stand to lose their entitlement to job restoration even if their employers provide additional, non-FMLA, leave." *Dogmanits v. Capital Blue Cross*, 413 F. Supp. 2d 452, 462 (E.D. Pa. 2005); *see also McGregor v. Autozone, Inc.*, 180 F.3d 1305, 1308 (11th Cir. 1999) (holding that the text of the FMLA "does not suggest that the 12 week entitlement may be extended").[3]

In this case, Plaintiff's allegations establish that Plaintiff exceeded the twelve-week FMLA leave period before attempting to return to work. (Am. Compl. ¶ 18.) Plaintiff was aware of his expected return date of September 8, 2005, but contends that Defendant permitted him to exceed the twelve-week period. (Am. Compl. ¶ 11-13, 15.) Because the FMLA provides for only twelve weeks of leave and does not allow for an extension of that period, any alleged extension granted by Plaintiff's supervisor constituted a non-FMLA leave extension, which is not protected by the statute. *McGregor*, 180 F.3d at 1308. Therefore, this Court finds as a matter of law that when Plaintiff exceeded the twelve-week FMLA leave period, he lost the protections he had under the FMLA. Thus, plaintiff has failed to state a claim under the FMLA.

---

[3] This Court acknowledges that one court in this District has held that an employee who took leave beyond the twelve weeks allowed by the FMLA, pursuant to the employer's internal leave program, "should not lose her FMLA protection for taking a leave longer than 12 weeks when her employer gave her the permission to do so." *Santosuosso v. Novacare Rehabilitation*, 462 F. Supp. 2d 590, 597-98 (D.N.J. 2006). This Court declines to follow such an approach and finds that *Santosuosso* is factually distinguishable from this case because here, unlike in *Santosuosso*, there is no allegation that Defendant had formal internal leave policies that conflicted with the FMLA. *See Thurston v. Cherry Hill Triplex*, No. 06-3862, 2008 U.S. Dist. LEXIS 60936, at *22 (D.N.J. Aug. 5, 2008).

### III. CONCLUSION

For the foregoing reasons, this Court will grant Defendant's motion to dismiss (Doc. No. 40), without prejudice. An appropriate form of order accompanies this Memorandum Opinion.

Dated: June 25, 2010
Newark, New Jersey

                                              S/Garrett E. Brown, Jr.
                                          Garrett E. Brown, Jr., Chief Judge
                                          United States District Court